GEO. W. WILCOX, INC. *vs.* SHELL EASTERN PETROLEUM PRODUCTS, INC.

Franklin.   September 21, 1932. — June 28, 1933.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Contract*, What constitutes, Validity.

A dealer, who conducted in Greenfield a business of selling gasoline, oil, automobiles and automobile supplies, and a service station and repair shop, and who was under contract with a gasoline refining corporation to sell its products for a three-year period, entered into negotiations with a second corporation engaged in the sale and distribution of gasoline and other petroleum products, as a result of which he and it executed an instrument in writing which recited that, if he should "obtain a release of" his contract in writing with the first corporation previous to the second corporation's having prepared another location for occupancy, "the parties hereto will enter into an agreement containing substantially the following provisions," which were contained in five numbered paragraphs, the first purporting to give to the dealer the exclusive right to sell the second corporation's products in the town, that corporation not directly nor indirectly to operate a filling station therein; the second paragraph containing an agreement by the second corporation to sell gasoline to the dealer "at the same price based upon its retail service station price as is now provided in the . . . [dealer's] contract with the" first corporation;

the third paragraph providing that the second corporation would "pay for all newspaper and billboard advertising and will pay a portion of the cost of direct mail advertising"; the fourth paragraph providing a rental option to the dealer; and the fifth paragraph providing that "The agreement to be entered into between the parties hereto as provided above" should cover a period of five years with a privilege in the dealer to renew it for a further five years. In an action by the dealer against the second corporation for breach of such instrument in writing, a jury found specially that the plaintiff was excused by acts of the defendant from procuring a release from the plaintiff's contract with the first corporation. Upon exceptions by the plaintiff to an order directing the entry of a verdict for the defendant, it was *held,* that

(1) Such instrument in many particulars did not state the essential terms of a contract, by which the parties intended to be bound, with sufficient definiteness and clarity so that a court, by interpretation with the aid of existing and contemplated circumstances, could enforce it;

(2) The verdict rightly was ordered entered.

In the action above described, it *was stated,* that the final contract later to be made was intended to be the contract between the parties and not the instrument which was the basis of the action.

CONTRACT. Writ dated December 26, 1929.

In the Superior Court, the action was tried before *Cox,* J. Material evidence and proceedings at the trial are described in the opinion. After the recording, with leave reserved, of a verdict for the plaintiff in the sum of $50,083, the judge ordered entered a verdict for the defendant. The plaintiff alleged exceptions.

*C. Fairhurst,* (*J. T. Bartlett* with him,) for the plaintiff.

*S. H. Pillsbury,* (*F. E. Allison* with him,) for the defendant.

DONAHUE, J. The plaintiff conducts in Greenfield the business of selling gasoline, oil, automobiles and automobile supplies, and a service station and repair shop. In March, 1929, it made a written contract with the Gulf Refining Company by which that company agreed to sell and the plaintiff to purchase gasoline for use in the plaintiff's plant during a three-year period beginning in March, 1929. The defendant is engaged in the sale and distribution of gasoline and other petroleum products in New England and other Atlantic States. On June 14, 1929, a written instrument was signed on behalf of the plaintiff

by its president and in the name of the defendant by one Algar, who was an assistant district manager of the defendant. The plaintiff has brought suit on this instrument. The answer of the defendant includes a denial of the signature, execution and delivery of the instrument by the defendant and a specific denial of the authority of Algar to sign, seal, execute or deliver it.

The case was tried before a jury in the Superior Court. In answer to written questions submitted by the judge the jury found that Algar had authority to bind the defendant by signing the instrument in its behalf, that the plaintiff was excused by acts of the defendant from procuring a release from the plaintiff's contract with the Gulf Refining Company as required by the plaintiff's contract with the defendant and that the defendant broke its contract with the plaintiff, the plaintiff not being in default. The jury returned a verdict for the plaintiff in the sum of $50,083, the judge having reserved leave with the assent of the jury under G. L. (Ter. Ed.) c. 231, § 120, to enter a contrary verdict. On motion of the defendant the judge entered a verdict for the defendant. The plaintiff's exception to this action of the judge is here presented by a bill of exceptions. The defendant has also filed a bill of exceptions setting forth exceptions taken by it to the refusal of the judge to give certain requested rulings and to the admission of certain testimony during the course of the trial. The defendant agrees that if the plaintiff's exceptions are overruled the exceptions taken by the defendant become immaterial.

The instrument recites in its preambles that the plaintiff "operates a filling station at 100 Federal Street in said Greenfield, and is selling products of the Gulf Refining Company"; that the plaintiff "is at the present time under what appears to be a written contract obligating it to continue to sell Gulf products at said filling station until approximately March, 1932"; that "the parties hereto have entered into certain negotiations with regard to sale" by the plaintiff of the defendant's products; and that the defendant "expects to acquire land on West Main

Street in said Greenfield and construct thereon a modern well equipped service station and will apply either directly or indirectly for a permit from the town authorities to operate said station." The instrument provides that "In the event that the . . . [plaintiff] shall obtain a release of its written contract with the Gulf Refining Company prior to the time that the West Main Street Station of the . . . [defendant] is ready for occupancy, the parties hereto will enter into an agreement containing substantially the following provisions." Then follow five numbered paragraphs which provide (1) that the plaintiff "shall have the exclusive right to sell within the limits of the Town of Greenfield the . . . [defendant's] gasoline and lubricating products, and the . . . [defendant] will not either directly or indirectly operate any filling station in said Greenfield on its own behalf"; (2) that the defendant "will sell gasoline to the . . . [plaintiff] at the same price based upon its retail service station price as is now provided in the . . . [plaintiff's] contract with the Gulf Refining Company"; (3) that the defendant "will pay for all newspaper and billboard advertising and will pay a portion of the cost of direct mail advertising"; (4) that the defendant "will give to the . . . [plaintiff] the option to rent at such price as may be later determined, not exceeding per year six per cent of its real estate investment (exclusive of the cost of equipment) its service station on West Main Street . . . Greenfield, provided that a permit shall be granted by the Greenfield Board of Selectmen, for the sale of petroleum products at said station"; (5) that "The agreement to be entered into between the parties hereto as provided above shall cover the period of five years from the date thereof with the privilege on the part of the . . . [plaintiff] to renew said contract for a further period of five years." At the time the instrument was signed on June 14, 1929, the defendant had an option to purchase the land referred to in the instrument for $30,000. The option by its terms expired June 27, 1929, and was not renewed. The defendant never purchased that land but later built a station on the opposite side of West Main Street which was put into serv-

ice in the summer of 1930. A few days after the day when the instrument was signed the president of the plaintiff corporation went with his attorney to the office of the Gulf Refining Company in Boston and requested a release from the contract. He went there again in November, 1929, and a representative of that company estimated that the plaintiff would have to pay $25,000 or $30,000 to get out of its contract but no definite offer was made. No release was ever obtained.

The fact that the parties agreed in the instrument that there should be a later formal contract, while not conclusive on the question whether they intended earlier to be bound or to what extent they intended to be so bound, *Donovan* v. *Freeman*, 263 Mass. 561, tends to indicate the intent that their final contract was to be the binding expression of all their completed negotiations. *Lyman* v. *Robinson*, 14 Allen, 242, 254. *Doten* v. *Chase*, 237 Mass. 218, 220. The nature of their mutual undertakings and the circumstances existing at the time of the signing of the indenture and reasonably to be anticipated at that time point toward the same conclusion. The defendant was to give the plaintiff the exclusive right to sell the defendant's gasoline and petroleum products within the limits of the town of Greenfield in any event for a period of five years and, at the option of the plaintiff, for five years more. The relationship which the parties proposed to create necessarily included a considerable amount of details and, during its potentially long life, substantial sums of money. The reciprocal obligations of the parties in this relationship were such that ordinarily men entering into it would require a contract with full expression of their respective duties and liabilities. Yet the instrument in terms imposes no obligation upon the plaintiff by whose attorney it was drawn. It is difficult to believe that the parties intended to leave wholly to implication the character and extent of the plaintiff's liabilities and to provide such scanty specification or detail as to the defendant's performance of its obligations. But, if it be assumed that the record bears some evidence of a contrary intent and that therefore there

was on this point a question for the decision of the jury, still the plaintiff cannot recover if the instrument cannot be interpreted as an enforceable contract. The position of the plaintiff necessarily is that, although the parties definitely stipulated that there should be a final formal contract, it was intended that this should be no more than a memorial or record of what had actually been agreed upon at the time the instrument was signed, *Bines* v. *Rosen,* 263 Mass. 562, 565; *Duggan* v. *Matthew Cummings Co.* 277 Mass. 445, 450; and that the instrument of June 14, 1929, constitutes the contract which the plaintiff seeks to enforce. In order that the plaintiff may recover, the instrument relied on must be found to state the essential terms of a contract, by which the parties intended to be bound, with sufficient definiteness and clarity that a court, by interpretation with the aid of existing and contemplated circumstances, may enforce it. *Lyman* v. *Robinson,* 14 Allen, 242, 254. *Beach & Clarridge Co.* v. *American Steam Gauge & Valve Manuf. Co.* 202 Mass. 177, 182. *Kaufman* v. *Lennox,* 265 Mass. 487. We do not think that the instrument in question expresses such a contract. The instrument provides that the defendant will sell gasoline "at the same price based upon its retail service station price" as is provided in the plaintiff's contract with the Gulf Refining Company. This appears to be less than the price generally received by the defendant for its gasoline. There is no indication as to what price would be charged for "lubricating products" or as to how or by whom such price should be determined. We do not think that on the evidence any inference can be drawn as to the price to be paid for such products. That the price of "lubricating products" is a matter of some consequence is indicated by the testimony presented by the plaintiff on the question of damages that, of its total receipts in the year 1929 at its service station in Greenfield from the combined sales of gas and oil amounting to about $90,000, one ninth resulted from the sale of oil alone. The parties manifestly had in contemplation something with reference to the matter of advertising. The defendant was to pay for all newspaper

and billboard advertising and a "portion of the cost of direct mail advertising" but there is nothing to indicate how the questions whether or not any advertising was to be done, what was to be advertised or the extent of such advertising were to be determined. If there should be direct mail advertising, however that question might be determined, the defendant was to pay some portion, although there is no indication as to what portion, of the cost. There is nothing in the record which enables the court to interpret and apply this part of the instrument. The plaintiff was given the exclusive right for a term of years to sell the defendant's products in the town of Greenfield but in return the instrument in terms imposed no obligation on the plaintiff as to the quantity of such products it would purchase. The sole object of the defendant in entering into such an agreement was the sale of its products while the plaintiff was engaged in other lines of business connected with automobiles and did not undertake to limit its business to the sale of gasoline and lubricating products. It is apparent that the plaintiff in the conduct of its general business should be equipped to sell gasoline and oil but the desires of the defendant from time to time as to the quantity of the products it wished to sell to the plaintiff and the plaintiff's desires as to the quantity it wished to buy would not necessarily be the same. By the terms of the instrument the defendant had excluded itself for a term of years from otherwise disposing of its products in the territory ceded to the plaintiff. In such an agreement for the continuing purchase and sale of merchandise the quantity to be bought and sold is the very substance of the transaction. Within the limitations of good faith arising from the fact of the exclusive right to sell, the instrument itself, and the circumstances, leave the matter of quantity uncertain and indeterminable. The instrument in terms does not fix any obligation on the defendant as to the delivery of merchandise sold. The whole matter of the frequency, method and quantities of deliveries, and the rights and obligations of the parties with reference thereto is left untouched. The record shows that

the parties contemplated a continuing succession of sales by the defendant and the subject of delivery was manifestly of consequence to both. There is no provision as to the quantity of the defendant's products the plaintiff was obligated to take in a given period of time which might throw light on the understanding of the parties as to deliveries nor is there other evidence by which the uncertainty might be made certain. The instrument provides nothing as to the time or terms of payment by the plaintiff. The contemplated transactions of the parties were of such a character that a binding agreement would be expected to contain provisions both as to deliveries and as to payments. In their absence the record does not supply evidence of circumstances or of custom from which the terms of an agreement as to these matters can be inferred.

"It is essential to the existence of a contract that its nature and the extent of its obligations be certain." *Knowles* v. *Griswold*, 252 Mass. 172, 175. *Lyman* v. *Robinson*, 14 Allen, 242, 254. It is not enough if parties negotiating have agreed upon certain important terms if there has been no agreement on other essential elements of the undertaking, *Sibley* v. *Felton*, 156 Mass. 273, 276, although a contract is not necessarily unenforceable because the parties agree that the details of certain of its terms shall be left to be fixed at a future time or by the happening of later events. *Evers* v. *Gilfoil*, 247 Mass. 219. *Kirkley* v. *F. H. Roberts Co.* 268 Mass. 246, 252. The difficulty here is that the instrument sued on is silent as to material matters important in its interpretation for the ascertainment of the obligations of the parties and the evidence of the circumstances surrounding its making is not such as to permit by inference the supplying of the lack. "Many of the essential terms necessarily involved in the proposed undertaking are not set forth and without them no enforceable contract is shown." *Kaufman* v. *Lennox*, 265 Mass. 487, 489, and cases cited. *Young* v. *Titcomb*, 268 Mass. 14, 19.

Because of the conclusion here reached it becomes unnecessary to consider whether on other grounds the plaintiff

would be prevented from recovery. Since the plaintiff's exceptions must be overruled the defendant's exceptions become immaterial.

*Plaintiff's exceptions overruled.*
*Defendant's exceptions overruled.*