Frank H. KELLEY et al., Defendants,
Appellants,

v.

Otto HANSEN et al., Plaintiffs,
Appellees.

No. 5245.

United States Court of Appeals
First Circuit.

April 14, 1958.

———◆———

Robert W. Meserve, Boston, Mass., with whom John R. Hally, Nathan Newbury III, John A. Canavan, Jr., and Nutter, McClennen & Fish, Boston, Mass., were on brief, for appellants.

Frank L. Kozol, Boston, Mass., with whom Sidney Werlin and Friedman, Atherton, Sisson & Kozol, Boston, Mass., were on brief, for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

This is an appeal by the defendants below from a final judgment for the plaintiffs in the sum of $250,000, in accordance with a jury verdict.

An amended complaint in two counts was filed by the plaintiffs on May 4, 1955, in the United States District Court for the District of Massachusetts. The plaintiffs were Otto Hansen and Frederick J. Raskopf, citizens of New Jersey, and Herbert Moore, a citizen of New York. The named defendants were Frank H. Kelley and Walter R. Graham, trustees of Republican Daily News Employees Beneficial Fund, Paul F. Craig and John A. Mannix, trustees of Springfield Union Employees Beneficial Fund, Mary E. Gallagher, Sidney Cook, all citizens of Massachusetts, and Valley Trust, Inc., a Massachusetts corporation, which was a nominee of the two pension funds and was apparently set up solely for tax purposes. Cook disappeared from the case upon a directed verdict in his favor based on plaintiffs' opening statement. In the course of the proceedings, discontinuances against Gallagher and Valley Trust, Inc., were filed and allowed. This left as defendants in the case, subject to the eventual adverse judgment, the four named individuals who served as trustees of the aforementioned newspaper employees pension funds.

The first cause of action was predicated upon an alleged oral contract entered into on October 4, 1948, between the plaintiffs and the defendants through their agent, one Sherman H. Bowles, since deceased, who was the publisher, and the dominant factor in the two Springfield newspapers, the Republican Daily News and the Springfield Union. The contract related to complicated transactions involving the shares of stock in Alliance Manufacturing Company, an Ohio corporation; and defendants were alleged to have agreed that, upon any sale of said stock, the plaintiffs were to receive the sum of $169,000 "together with a reasonable share of the profits made upon such sale", wherefore the demand of the first cause of action was that judgment be entered against the defendants "in the total amount of $169,000 plus such share of the profits on said sale as the court shall determine, together with interest and costs." The second cause of action was like the first, except that the plaintiffs here omitted any allegation that the defendants had promised to pay a reasonable share of the profits, and judgment was demanded only "in said total amount of $169,000 together with interest thereon from September 1, 1954, plus their costs."

For an understanding of the case it is necessary to recite certain background negotiations between the plaintiffs and Sherman H. Bowles. Hansen, who was an accountant, an investment counselor, and a promoter of business enterprises, became interested in Alliance Mfg. Co. in 1946. Together with his associates and co-plaintiffs, Messrs. Raskopf and Moore, he had discussions with Bowles on the subject of the Ohio corporation; and according to plaintiffs' testimony Bowles proposed that they go into the purchase, on a fifty-fifty basis, of the entire capital stock of 50,000 shares for the price of $1,800,000, or $36 per share. An agreement for the purchase of the stock was entered into on May 27, 1946. Subsequently, due to various disagreements, Bowles withdrew from the deal, and the plaintiffs had to make new ar-

rangements for financing the purchase. Plaintiffs themselves acquired 18,000 shares, for which they advanced in cash the sum of $148,000, and the other 32,000 shares were acquired by various persons whom the plaintiffs had interested in the proposition. Plaintiffs also borrowed $500,000 from the Union Bank of Commerce in Cleveland, Ohio, on a demand note secured by deposit of their 18,000 shares plus an additional 9,800 shares which had been purchased by other persons whom plaintiffs had secured.

In the ensuing two years plaintiffs were unsuccessful in reselling the business and in paying off the loan from the bank, which they had only succeeded in reducing in the amount of $21,000. They were faced with pressure by the bank for further substantial reductions, and some of the owners of the pledged 9,800 shares were becoming restive. Plaintiffs had received a single firm offer for the stock, from one Frost, at $36 a share. But this did not appeal much to them, for one reason because it would involve no profit to them and their associates. Against this background Bowles re-entered the picture.

During the summer of 1948 Hansen met with Bowles in New York City on several occasions. According to Hansen's testimony, Bowles advised against the plaintiffs' acceptance of Frost's offer at $36 a share, and suggested, rather, that they would do better to deal with Bowles and the interests for which he spoke.

In view of the testimony offered by the plaintiffs, the jury were warranted in finding, and they did so find, that an oral agreement was reached between the plaintiffs and Bowles, on behalf of defendants, in Cleveland, Ohio, on or about October 4, 1948. Under this agreement, Bowles undertook to provide for picking up the bank loan, by which arrangement the interests represented by Bowles were to take over the 18,000 shares owned by the plaintiffs and to return the 9,800 pledged shares to their owners or to pay for the same, and the plaintiffs agreed to continue aiding in the operation of Alliance Mfg. Co. for at least a year in order to see whether its profitable operations could be enhanced. If the company proved to be unsuccessful, the plaintiffs would lose the $169,000 which they had already invested in the purchase of the shares of stock. If, on the contrary, it was successful and was sold at a profit, the plaintiffs would recover their $169,000 plus a reasonable share of the profits made upon such resale. Such was the substance of the oral agreement.

In August of 1948 the three plaintiffs had sent a letter to the Union Bank of Commerce which indicated that arrangements had been made for the payment of their indebtedness by Valley Trust, Inc., which letter also authorized the bank upon such payment to transfer the pledged 27,800 shares to whomever Valley Trust, Inc., might designate. Subsequently, Valley Trust, Inc., arranged for the balance of the indebtedness in the sum of $479,000 to be paid off by the payment of $79,000 in cash from the two pension funds, plus a loan of $400,000 from the Union Bank of Commerce secured by other securities out of the portfolio of the pension funds.

In September, 1948, Valley Trust, Inc., entered into agreements with the numerous holders of the 9,800 pledged shares. These agreements recited that in consideration of the procurement by Valley Trust, Inc., of the release of the 9,800 shares from the pledge to the bank and an undertaking to pay the holders thereof either in cash or to tender them certificates for the stock, Valley Trust, Inc., should have control of the 9,800 shares for at least a year, and that upon receipt of either $36 a share or a certificate for the stock, such holders should release the plaintiffs from all liability arising out of the original loan transaction.

After Valley Trust, Inc., by the foregoing arrangement discharged the original loan by the bank, the treasurer of the Springfield Union, one Mozley, went with Alliance Mfg. Co. as executive vice president, and Bowles and other associ-

ates of his went on the board, eventually replacing the plaintiffs. Under this new management the company was revitalized, dividends on its stock increased, and the value of the stock rose. In the latter part of 1954 the two pension funds sold out their holdings in Alliance Mfg. Co. at a large profit which, exclusive of the extensive dividends which had been received, amounted to $1,681,000 on the 18,000 shares formerly owned by the plaintiffs.

On this appeal appellants urge again, as they did below, that no judgment at all should have been allowed in favor of the plaintiffs on the alleged oral contract, under the applicable provisions of the Massachusetts Statute of Frauds, G.L.(Ter.Ed.) c. 259, § 1, providing that no action shall be brought upon an agreement that is not to be performed within one year of the making thereof, unless the promise upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party sought to be charged. We think it is quite clear that this point is not well taken. No doubt both Bowles and the plaintiffs assumed that it would probably take more than a year to put Alliance Mfg. Co. in such a position that its stock could be sold out at a profit. But if within a year an opportunity opened up to dispose of the stock at a profit, it is clear that Bowles and his associates were fully authorized to make the sale; and thus the oral contract had the possibility of being completely performed within the year.

Appellants also urge that the court below was in error in disregarding the provisions of the parol evidence rule. This argument seems to be in the nature of an afterthought. We cannot find, after a diligent search of the record, that appellants, defendants below, ever asked the trial judge to rule on the applicability of the parol evidence rule, whether in the amended answer, or in objections to the admission of evidence, or in their motions for a directed verdict or for requested instructions or for the entry of judgment for the defendants notwithstanding the verdict.

The parol evidence rule argument is predicated upon defendants' Exhibit B in the record, which appellants claim is the written document embodying the terms of the alleged oral agreement between the parties. Because of the importance which appellants attach to this document, Exhibit B, we have reproduced it in full in the footnote.*

---

* "Agreement between Otto Hansen, Herbert W. Moore, Frederick J. Raskopf, parties of the first part and Mary E. Gallagher and/or the Valley Trust Inc. parties of the second part, for the benefit of certain 'other parties at interest'.

"Whereas the above mentioned parties of the first part have had a loan at the Union Bank of Commerce of Cleveland in the amount of $500,000 which is now approximately $479,000, and

"Whereas this loan was secured by 18,-000 shares of stock of the Alliance Manufacturing Company of Alliance, Ohio, owned by parties of the first part, and by an additional 9,800 shares owned by others, referred to above as 'other parties at interest', and by the signatures of A.E.R. Schneider and Melvin Hott, and

"Whereas the bank held the aforementioned shares in one certificate for 27,-000 [sic] shares, and had no knowledge as to the name of the 'other parties at interest', and

"Whereas the bank has recently been pressing for payment of the loan or requesting a sale of the 27,800 shares in order to liquidate the loan,

"In Consideration of Mary E. Gallagher and/or the Valley Trust Inc., parties of the second part, arranging with the bank for payment of the loan and release of the stock, we, Otto Hansen, Herbert W. Moore and Frederick J. Raskopf, parties of the first part, hereby AGREE as follows:

"To cause the Union Bank of Commerce to transfer to Mary E. Gallagher and/or the Valley Trust Inc. the 27,800 shares of common stock of the Alliance Manufacturing Company and to forego forever any right, title and interest in the 18,000 shares formerly owned by us in order to protect from sale by the bank the other 9,800 shares owned by the 'other parties at interest' and to further secure to them a price of $36 per share for as many shares as each of the holders

This Exhibit B does not purport to be an agreement between the parties memorializing the terms of the oral agreement on which the present action is brought. As stated in the opening paragraph, it is an agreement between the three plaintiffs, parties of the first part, and Gallagher and the Valley Trust, Inc., parties of the second part, "for the benefit of certain 'other parties at interest'". These "other parties at interest" who were thus the beneficial parties of the second part are disclosed subsequently in such agreement to be, not these defendants, but the various holders of the pledged 9,800 shares of stock. It is further provided in this agreement that if, as a result of the transactions described therein, these "other parties at interest", namely, the former owners of the 9,800 shares, receive a price of $36 per share for their stock or, in the alternative, receive back their individual certificates of stock, then, in either eventuality, "the former owners of the 9,800 shares release us [presumably the plaintiffs] of all liability to them."

 This is the document which counsel for the defendants referred to at the trial as a "release". That it was, but it was a release of the plaintiffs from any liability they might have owed to the holders of the 9,800 shares for having pledged their stock as security for the loan. It was obviously not "a general release in writing whereby the plaintiffs released the defendants from the cause of action set forth in the Plaintiff's Bill of Complaint", as alleged in the fourth defense of defendants' amended answer. The parol evidence rule defense is not a favorite of the courts; certainly the defendants here failed to establish that Exhibit B constituted an "integration" between the plaintiffs and defendants, represented by Bowles, of the terms of the oral agreement sued upon.

 It is also contended by appellants that there was no evidence to sustain the jury's finding, in answer to one of the questions propounded to the jury by the trial judge, to the effect that Bowles was authorized by the defendants to make the alleged oral contract on their behalf. There was no direct evidence that Bowles ever disclosed to the defendants the terms of his negotiations with the plaintiffs in connection with the ac-

thereof contributed to the collateral at the bank consisting of the single certificate of 27,800 shares.

"Further we consent and agree to an agreement between the parties of the second part and the other parties at interest relative to the recovery of $36 per share for the 9,800 shares which accompanies this agreement and agree to vote as directors and in every other way use our best efforts to assist the parties of the second part as they may direct in the management of the Alliance Manufacturing Company or in an effort to sell the 27,800 shares for the sole purpose of securing to the 9,800 shares former owners the recovery of a price of $36 per share for their stock or the return to them as individuals of individual certificates of the stock upon either of which eventualities the former owners of the 9,800 shares release us of all liability to them.

"We agree that it lies in the sole discretion of the parties of the second part as to whether they issue individual certificates for the 9,800 shares within a year from date or consummate a sale of the stock and distribute at the rate of $36 per share to the former owners.

"A letter from us to the Union Bank of Commerce authorizing the transfer of the 27,800 shares to the parties of the second part is attached and made a part of this agreement and is a part of the consideration for the parties of the second part to pay the loan to said bank.

"We further agree to safeguard and hold free and harmless the parties of the second part from any liability to the holders of the 9,800 shares for the continuance of their stock in one certificate in the name and under the ownership of the parties of the second part.

"The parties of the second part agree to use their best efforts and discretion in the management of Alliance Manufacturing Company or in consideration of any sale of the stock for the benefit of the 'other parties at interest' until such time as the latter shall have received *$36.00 per share or individual certificates* for their stock.

"Otto Hansen
"Herbert W. Moore
"Frederick J. Raskopf
"Valley Trust Inc.
 by: ..... ...........""

quisition of the stock in Alliance Mfg. Co. It is clear, however, that Bowles discussed with defendants the profitable prospects of Alliance Mfg. Co., and the desirability of investing some of the pension funds in the stock of that company. It is also clear that the defendants were persuaded by the favorable picture painted by Bowles to authorize him to acquire the stock as an investment which, as it turned out, was a very good investment indeed. From the prior relationship of Bowles to the pension funds, and his dominating influence with the trustees, who looked to him as the "big boss", and from the other facts contained in the record, we are clear that the jury was warranted in finding that Bowles was fully authorized in fact to make the alleged oral agreement on behalf of the defendants.

■■ There is one difficulty with the judgment below which we have not been able to surmount. As previously stated, the amended complaint set forth two causes of action. The second cause of action sought recovery of only the sum of $169,000 with interest. We find no fault with that. The first cause of action alleged that the defendants promised to pay out of the profits of a resale of the stock not only the sum of $169,000 but also "a reasonable share of the profits made upon such sale." It seems clear that the parties in their oral negotiations never determined upon a fixed percentage of the profits which they deemed to be a "reasonable" share, so that this term of the contract must be taken to be void on account of vagueness, if the contract, properly construed, meant no more than that. See Geo. W. Wilcox, Inc., v. Shell Eastern Petroleum Products, Inc., 1933, 283 Mass. 383, 186 N.E. 562; 1 Williston on Contracts § 41 (Rev. ed. 1936).

The trial judge evidently had this difficulty in mind, for he charged the jury on the point as follows: "If * * * you find there was no evidence of the percentage of participation, then, in accordance with the worth of their services, you would add to that $169,000 [no mention of was made of the claim for interest on this sum] whatever was a reasonable amount."

It is true, there are cases in Massachusetts and elsewhere under which contracts containing no express stipulation for a fixed compensation have been construed as intending to impose the obligation to pay the plaintiff the reasonable value of his services; and where this is so, in an action on such a contract, the trier of the facts must determine the reasonable value of such services on the evidence submitted. But the difficulty in the case at bar is that, under the proven oral contract, there seems to have been no undertaking by the defendants to pay the plaintiffs, out of the profits, for the reasonable value of their "services".

It is also true that there are cases where a contract recovery is denied on account of vagueness in the terms of the contract, but where, in order to prevent unjust enrichment, the plaintiff has been allowed to recover on a *quantum meruit*, based on the extent to which the services rendered by the plaintiff, not officiously, have conferred a benefit upon the defendants. But if that is the theory on which the trial judge left the point to the jury, in the instruction above quoted, the difficulty is that the case was not tried on a *quantum meruit* basis, and consequently the plaintiffs adduced no evidence which would enable the jury to evaluate what their services were worth, or rather, how much these services benefited the defendants. Since the jury, as permitted in the trial court's instructions, added $81,000 to the $169,000, making a total verdict of $250,000, it follows that there was reversible error in this respect.

We think it unnecessary to refer specifically to other points raised by appellants which seem not to be well taken.

A judgment will be entered vacating the judgment of the District Court, setting aside the verdict and remanding the case to that Court for further proceedings not inconsistent with this opinion.