USCA1 Opinion

 

 [NOT FOR PUBLICATION] United States Court of Appeals For the First Circuit ____________________ No. 96-2331 LOUIS GIULIANO & PATRICIA LETT, ETC., ET AL., Plaintiffs - Appellants, v. NATIONS TITLE, INC., ET AL., Defendants - Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Dowd, Jr.,* Senior District Judge. _____________________ _____________________ Stephen C. Maloney for appellants. __________________ John H. Henn, with whom Stephen B. Deutsch and Foley, Hoag & ____________ __________________ _____________ Eliot were on brief for appellees. _____ ____________________ JANUARY 23, 1998 ____________________  ____________________ * Of the Northern District of Ohio, sitting by designation. DOWD, Senior District Judge. This dispute concerns DOWD, Senior District Judge. ______________________ questions of title to a number of lots in a real estate subdivision located on Martha's Vineyard. Plaintiffs are the developers of the subdivision, and Defendant is the title insurance company which, under a predecessor name, issued title insurance policies on these lots. As the result of many adverse claims against these lots, Defendant decided to try to obtain title to all the lots, and then work to preserve the subdivision as an entity. Toward this end, Defendant and Plaintiffs entered into several written agreements concerning the transfer of title from Plaintiffs to Defendant. It is the enforceability of these various agreements that is at the heart of this action.  Plaintiffs filed this action alleging that Defendant had breached a 1990 agreement to develop the property, and had otherwise committed fraud, negligence, breach of fiduciary duty, and a violation of Mass. Gen. Laws ch. 93A for unfair business practices. Defendant responded with a counterclaim for a declaratory judgment that a 1991 agreement between the parties was valid, enforceable and settled all disputes between the parties. The district court granted summary judgment to Defendant, holding that the 1990 agreement was an unenforceable "agreement to agree," and that the 1991 agreement was a valid agreement and settled the parties' disputes.  Plaintiffs now appeal the district court's grant of summary judgment to Defendant. Plaintiffs also appeal the district court's subsequent denial of their proposed second -2- amended complaint on the ground that it was futile. For the reasons set out below, we affirm the district court's holding that based on the undisputed facts, Defendant was entitled to judgment as a matter of law. BACKGROUND BACKGROUND Patricia Lett ("Lett") and Louis Giuliano ("Giuliano") (collectively "Plaintiffs") are the developers of the "Vineyard Acres II," a 148-unit subdivision located in Edgartown, Massachusetts. Lett initially took title to the lots in her individual capacity, but in 1983 all of Lett's title was conveyed to Lett in her capacity as "trustee" of the "Vineyard Acres II Realty Trust."1 Plaintiffs sold approximately 77 lots, and Lett as trustee retained ownership of approximately 69 lots which she then mortgaged to Old Colony Cooperative Bank ("Old Colony"). Nations Title Insurance-NY ("NTNY"), under the predecessor name of "TRW," issued title insurance policies totaling approximately $11 million to the buyers of these lots.  Subsequently, NTNY's predecessor learned of numerous adverse title claims affecting the subdivision, and was obliged to defend against these actions as a result of issuing the title policies noted above. In 1987, as a result of these adverse claims, NTNY's predecessor brought suit in the United States District Court for the District of Massachusetts ("The Fraud Action") against Plaintiffs, alleging that Lett and Giuliano knew  ____________________ 1 This Court was unable to determine from the record whether Lett was a beneficiary of the trust. -3- they did not have good title to the land, and fraudulently induced NTNY's predecessor to issue title policies to the purchasers of the land and the financial institutions which gave them mortgages. Title U.S.A. Ins. Corp. of New York v. Lett, _____________________________________ ____ C.A. No. 87-701-WD (D. Mass.). NTNY's predecessor then decided to try to obtain title to all the lots, and then work to preserve the subdivision as an entity. Toward this end, NTNY, under its predecessor name of TRW, and Lett entered into an agreement on August 8, 1990 ("1990 Agreement"). This 1990 Agreement sketched out an understanding that had been reached by the parties with regard to TRW's plan to acquire the lots that Old Colony was preparing to sell at a foreclosure sale. The preamble of the 1990 Agreement states that "for good and valuable consideration as described below, [the parties] enter into this agreement to work cooperatively in a project involving the continuation of the development, marketing and sale of the Vineyard Acres II subdivision." The agreement goes on to state that: All Parties agree to use their best and reasonable efforts to acquire for the benefit of all Parties that portion of Vineyard Acres II encumbered by a mortgage held by Bank of New England-Old Colony on which said bank intends to foreclose. TRW agrees that if it acquires said portion pursuant to the foreclosure sale, it will hold said portion for the benefit of all Parties in an effort to work cooperatively to accomplish the Parties' objective of developing, marketing, and selling the Vineyard Acres II subdivision. . . . .  All Parties agree that their mutual objective is to prepare and develop Vineyard -4- Acres II lots for sale, and to sell the same without undue delay. The Parties agree to use their best and reasonable efforts and to act in good faith to achieve their objective. The Parties agree to divide the proceeds of the sale of Vineyard Acres II lots as follows: a fixed amount to be agreed upon by all Parties will be paid to TRW for expenses incurred and proceeds exceeding that fixed amount paid to TRW will be paid to Lett. The parties signed the agreement, and NTNY's predecessor was the successful bidder at the foreclosure sale. Lett claims on appeal that because NTNY's predecessor agreed to hold the property from the foreclosure sale "for the benefit of all Parties," she has an interest in that property. The parties continued negotiations to try to agree upon the precise terms of an overall agreement which would include settlement of the Fraud Action, which was still moving toward trial. On March 21, 1991, the parties signed such an agreement ("1991 Agreement"). This 1991 Agreement was written in the form of a letter from NTNY, under its predecessor name of TRW, to Lett and Giuliano. The first paragraph states that it is "written to memorialize and confirm the terms upon which you and TRW have agreed to settle your disputes." Under this agreement, Giuliano and Lett (as trustee)2 agreed to transfer various specified interests within the Vineyard Acres II subdivision to NTNY's predecessor in exchange for specified consideration, including payment to Lett and Giuliano of $350,000. All pending litigation  ____________________ 2 Lett contends that she specifically crossed out the parts of the agreement referring to Lett "individually," thus intending to retain any lots which she held as an individual. -5- between the parties, including the Fraud Action, was to be dismissed. Additionally, NTNY's predecessor agreed to use its best efforts to develop, market, and sell the lots within the subdivision. Further, the agreement stated that once the lots were developed and sold, Lett and Giuliano would receive all proceeds above NTNY's predecessor's "sunk costs." The items which NTNY's predecessor could include and recover as these "sunk costs" were specifically enumerated, and covered all aspects of NTNY's predecessor's costs related to Vineyard Acres II.  On the day the 1991 Agreement was signed, Lett and Giuliano delivered the required deeds to NTNY's predecessor, and NTNY's predecessor paid them $350,000 pursuant to the agreement. The Fraud Action was dismissed shortly thereafter. In 1994, Giuliano applied for a loan from NTNY. NTNY, still uncertain about how the court system would evaluate the 1990 agreement, required Lett to execute, as part of this loan transaction, an "Assignment, Agreement and Release" in which Lett released any claims she may have had against "Nations Title Insurance Company." As printed, the document released Lett's claims against "Nations Title Insurance Company, of Overland Park, Kansas." NTNY has always contended, however, that all parties intended this to be NTNY (Nations Title Insurance-NY), which was the company making the 1994 loan and taking back a note and mortgage. In fact, there are the handwritten words "of New York Inc. and family" added after the printed name of the insurance company on this 1994 deed, but Lett contends that when -6- she signed the release, such words had not been added. In this document, Lett also assigned "any and all right, title and interest that she has or may have had in any and all lands in the Town of Edgartown, County of Dukes, Commonwealth of Massachusetts, to said Louis Giuliano." Lett contends this was done so that it would be easier for Giuliano alone to work with NTNY on developing the property. On December 19, 1994, following the execution of this agreement, NTNY loaned Giuliano $165,000, taking back a note and mortgage for unrelated property owned by Giuliano located in Rhode Island. Plaintiffs subsequently brought this action for, among other things, fraud and violation of Mass. Gen. Laws ("G.L.") ch. 93A, for unlawful business practices. The heart of Plaintiffs' argument was their claim that the 1990 agreement was an enforceable agreement which gave Lett, in her individual capacity, an interest in the Vineyard II property. NTNY counterclaimed and moved for summary judgment, claiming that the 1990 agreement was an unenforceable "agreement to agree," and that the 1991 agreement settled all claims between the parties because Lett transferred all title in the property to NTNY's predecessor. Plaintiffs, however, contend that while in the 1991 agreement Lett transferred the interest she held as a trustee, she did not transfer the property she held as an individual through the 1990 agreement. Plaintiffs also claimed that due to the language of the 1994 agreement, Lett released only her claims against "Nations Title Insurance Company," which is not the name -7- of any party to this lawsuit, and that Lett did not release her claims against NTNY. Further, Lett claims that in this 1994 documrty to Giuliano, which was her individual interest in the property acquired from the 1990 agreement, thus leaving Giuliano now free to pursue claims against NTNY. The district court granted NTNY's motion for summary judgment. The court held that the 1990 letter is an unenforceable "agreement to agree." The court then held, as an alternative ruling, that Lett had given up any rights she obtained under that 1990 agreement by signing the 1994 release. The court then declared the 1991 settlement agreement to be valid and enforceable. Finally, the court gave Plaintiffs leave to file an amended complaint setting forth their fraud claim with particularity. The court also gave Plaintiffs leave to reassert their 93A claim if they were able to meet the jurisdictional prerequisites of such claim. Following this grant of summary judgment, Plaintiffs submitted a Proposed Second Amended Complaint. The district court denied Plaintiffs' motion to amend as futile. This appeal followed. CONTRACT INTERPRETATION CONTRACT INTERPRETATION This case initially requires the analysis of the three agreements involved in this matter, and the determination of their enforceability: (1) the 1990 agreement between NTNY (under its predecessor name of TRW) and Lett, which provides the basis for Plaintiffs' claim that Lett held an interest in the property -8- as an individual, and which NTNY claims is unenforceable; (2) the 1991 agreement between NTNY (under its predecessor name of TRW) and Plaintiffs, which NTNY claims settles all claims between the parties, and which Plaintiffs claim is unenforceable; and (3) the 1994 assignment and release, which Plaintiffs claim assigned to Giuliano all of Lett's rights and title with regard to the property she claimed as an individual through the 1990 agreement. 1. Standard of Review 1. Standard of Review We review the district court's grant of summary judgment "de novo," drawing reasonable inferences in favor of the nonmovant. Garita Hotel Ltd. Partnership v. Ponce Federal Bank, _____________________________ ___________________ 122 F.3d 88 (1st Cir. 1997). An inference is "reasonable" on de novo review only if it can be drawn from the evidence without resort to speculation. Hidalgo v. Overseas Condado Ins. _______ _______________________ Agencies, Inc., 120 F.3d 328 (1st Cir. 1997). The district _______________ court's grant of summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Hidalgo, supra, at 332. An appellate panel is not restricted to _______ _____ the district court's reasoning but can affirm a summary judgment on any independently sufficient ground." Mesnick v. General _______ _______ Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991).  _________ 2. Enforceability of the 1990 Agreement 2. Enforceability of the 1990 Agreement -9- Under Massachusetts law, an "agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto." Rosenfield v. U.S. Trust Co., 290 Mass. __________ ______________ 210, 195 N.E. 323 (1935). "A purported contract which is no more than an agreement to agree in the future on essential terms, or one which does not adequately specify essential terms, ordinarily will be unenforceable." Air Technology Corp. v. General Elec. ____________________ _____________ Co., 347 Mass. 613, 626, 199 N.E.2d 538, 548 (1964). ___ In determining whether an agreement is an unenforceable "agreement to agree" or an enforceable contract, the key issue for the court is "whether the parties intended to be bound when they signed the contract and, if so, whether the initial agreement included all of the essential terms." Rand-Whitney ____________ Packaging Corp. v. Robertson Group, Inc., 651 F. Supp. 520, 535 _______________ _____________________ (D. Mass. 1986). Accordingly, a letter of intent may be binding or nonbinding, depending on the intentions of the parties. Id. ___ Further, the fact that a further agreement is contemplated does not defeat a finding that the original agreement was a binding contract, so long as the essential terms are agreed upon at the start. Id. The essential terms must be set forth "with ___ sufficient definiteness and clarity that a court, by interpretation with the aid of existing and contemplated circumstances, may enforce it." George W. Wilcox, Inc. v. Shell ______________________ _____ Eastern Petroleum Products, 283 Mass. 383, 388, 186 N.E. 562, 564 __________________________ (1933). -10- A review of the 1990 Agreement in the instant case reveals that the district court was correct in its holding that this agreement was an unenforceable "agreement to agree." The agreement indicates no intention by the parties to be bound to particular terms; rather, the letter commits the parties only to working "cooperatively in a project involving the continuation of the development, marketing and sale of the Vineyard Acres II subdivision." The language used includes terms such as "best and reasonable efforts" and "reasonable amounts," and other such generalities, but contains no specific figures, deadlines or actions to be taken by either party. This lack of duties and responsibilities assigned to either party makes this "Letter Agreement" unenforceable because it gives the court no guidelines which it could apply to enforce the contract. See George W. ___ _________ Wilcox, supra (valid contract must set out essential terms with ______ _____ sufficient definiteness and clarity so court can interpret and enforce it). Further, the parties' failure to include either the exact amount NTNY would retain from the lot sale proceeds, or the formula for its calculation renders this contract invalid.3 Plaintiffs argue that under the case of Hastings ________ Associates, Inc. v. Local 369 Bldg. Fund, Inc., 42 Mass. App. Ct. ________________ __________________________  ____________________ 3 The 1990 Agreement provides: The Parties agree to divide the proceeds of the sale of Vineyard Acres II lots as follows: a fixed amount to be agreed upon by all Parties will be paid to TRW for expenses incurred and proceeds exceeding that fixed amount paid to TRW will be paid to Lett. -11- 162, 675 N.E.2d 403 (1997), the fact that the parties agreed that NTNY's predecessor would subsequently receive "a fixed amount to be agreed upon" is sufficiently definite to constitute an enforceable contract. However, an analysis of the Hastings case ________ shows that it is easily distinguished, and that the vague discussion of the payment amount in the 1990 Agreement supports a finding of indefiniteness. In Hastings, a Massachusetts appeals court held that a ________ lease renewal provision was enforceable where it left open a payment term but provided that if the parties could not agree, then they were to select a third party to determine the amount. The appeals court there held that this provision was enforceable, and not merely an "agreement to agree" because the language clearly demonstrated that the only thing that was left open was the identity of a third party to solve any potential dispute that should arise. Id. at 409-10. This did not render the agreement ___ indefinite due to the parties' otherwise clear intention to be bound, and the "commonly employed practices . . . for selecting a neutral third party to determine value." Id. at 410.  ___ We find Plaintiffs' reliance on Hastings in this matter ________ misplaced. While the contract in Hastings provided for a ________ resolution in case the parties themselves could not agree on the formula to use, the 1990 Agreement involved here did no such thing. Rather, the 1990 Agreement merely stated that the parties would discuss and agree upon the formula at a later date. This vague language gives a court no way to interpret and enforce the -12- intent of the parties, and thus is an unenforceable contract. See Saxon Theatre Corp. v. Sage, 347 Mass. 662, 666, 200 N.E.2d ___ ____________________ ____ 244 (1964) (finding unenforceable a letter agreement providing that the "basic plans and specifications" of a proposed building were "to be mutually agreed upon"). In light of the fact that this agreement has left out an essential term, and gives the court no way to enforce the rights and duties of the parties, we affirm the holding of the district court that the 1990 Agreement is an unenforceable "agreement to agree."  3. The 1994 Release 3. The 1994 Release Plaintiffs claim that by this document, Lett assigned to Giuliano all the interest in the Vineyard II property that she held as an individual as a result of the 1990 Agreement. This 1994 document also contained a release of Lett's claims against "Nations Title Insurance Company." Plaintiffs claim this did not release Lett's claims against Defendant NTNY (Nations Title Insurance-New York) and so Giuliano is still free to pursue those claims as Lett's assignee. NTNY, on the other hand, claims that it was the clear intent of the parties for Lett to release her claims against NTNY in this agreement, and that despite any assertion to the contrary, the name used in the document unambiguously refers to NTNY. While the district court made an alternative ruling that the 1994 release was valid, we do not reach this issue due to our above holding that the 1990 Agreement is an unenforceable -13- agreement to agree. The only interest Lett claims she transferred to Giuliano in this 1994 agreement was the interest she claims from the 1990 Agreement. Because we have held that this 1990 Agreement is unenforceable, Lett cannot claim any interest through it.4  4. The 1991 Agreement 4. The 1991 Agreement Plaintiffs argue that there are three inferences that must be made in their favor which preclude affirmation of the grant of summary judgment on the issue of the 1991 Agreement: (a) the 1991 Agreement was not signed by Christopher Likens, the Vice President of NTNY's predecessor, on or about March 21, 1991; and he was unable to produce an original or copy with his signature on it until after the lawsuit commenced; (b) Lett signed the 1991 Agreement solely as trustee because she intended in that transaction to convey only her interest as trustee in some mortgages on 32 lots on the Property, and not the interests she had acquired personally in the lots covered by the 1990 Agreement; and (c) Likens told Giuliano that Likens had never signed the 1991 Agreement, had destroyed it, and never considered it an operative agreement. We hold that even when taking the inferences as true, Plaintiffs still fail to raise any genuine issues of material fact that would preclude summary judgment.   ____________________ 4 While there may have been an issue of fact as to whether an ambiguity existed concerning the party which was released by the 1994 document, it is not relevant to this legal analysis since our holding about the 1990 Agreement extinguishes any interest or claim that Lett released in this document. -14- 14 The first assertion, that Likens failed to sign the agreement on behalf of NTNY's predecessor, is irrelevant. To be enforceable, a contract need only contain the signature of the party against whom it is to be enforced. Forman v. Gadouas, 247 ______ _______ Mass. 207, 213 (1924) (contract need not be signed by party seeking enforcement). Plaintiffs do not contest that they themselves signed the 1991 agreement. Therefore, even if Likens never signed the 1991 Agreement on behalf of NTNY's predecessor, it is still valid and enforceable against Plaintiffs since they do not contest that they signed it. The second assertion, that Plaintiff Lett signed the 1991 Agreement only as a trustee, creates no genuine issue of material fact. Even assuming that this is true, and that by the 1991 Agreement Lett retained the interest in the land she held in her individual capacity, our earlier ruling concerning the 1990 Agreement makes this point moot. The only interest that Lett claims to hold as an individual is that which she claims to have received through the 1990 Agreement. However, because we have held that the 1990 Agreement is unenforceable, Lett can claim no interest as an individual. Therefore, at the time of the 1991 Agreement, the only interest Lett held was as a trustee, which is the capacity in which she signed the 1991 Agreement, and transferred all title to NTNY's predecessor. Plaintiffs' third assertion, that Likens told Giuliano he never signed the 1991 agreement, had destroyed it, and never considered it an operative agreement, is also immaterial to our -15- 15 review. Even if taken as true, these assertions do not show that the contract was improperly executed or was otherwise invalid. Furthermore, after signing, substantial performance took place: Lett and Giuliano transferred deeds to NTNY's predecessor as required under the contract, NTNY's predecessor paid the $350,000, and the pending Fraud Action was dismissed. I n conclusion, Plaintiffs have presented no evidence of a genuine issue of material fact supporting their position that the 1991 agreement was invalid. Therefore, we affirm the district court, and hold that the 1991 agreement was valid. THE PROPOSED SECOND AMENDED COMPLAINT THE PROPOSED SECOND AMENDED COMPLAINT Plaintiffs next argue that the district court erred in denying their motion to file their proposed second amended complaint as futile. Plaintiffs argue that their amended fraud count meets the particularity requirements of Fed. R. Civ. P. 9(b), and that their other amendments state viable claims as well.5  ____________________ 5 The proposed amendments are as follows: The Amended Fraud Claim (1) "Defendants falsely and fraudulently, and with intent to defraud the Plaintiffs, represented to the Plaintiffs that they would hold the subject property in trust and develop it for all parties [sic] benefit." Proposed Second Amended Complaint, 95 (A at 398). (2) "The defendants falsely and fraudulently, and with intent to defraud the Plaintiffs, represented to the Plaintiffs that the March 21, 1991 Agreement related solely to the 39 Bay Court Lots and that the Agreement related to Patricia Lett as Trustee -16- 16 1. Standard of Review 1. Standard of Review The 1st Circuit holds that although motions to amend are liberally granted, a court may deny them if it believes that, as a matter of law, amendment would be futile. Demars v. General ______ _______ Dynamics Corp., 779 F.2d 95, 99 (1st Cir. 1985) (quoting Tiernan ______________ _______ v. Blyth, Eastman, Dillon & Co., 719 F.2d 1, 4 (1st Cir. 1983). _____________________________ 2. The Amended Fraud Claim  2. The Amended Fraud Claim  Under Fed. R. Civ. P. 9(b), when alleging fraud, the complaint must set forth "specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading." Serabian v. Amoskeag Bank Shares, Inc., 24 ________ __________________________  ____________________ and further that the Agreement had been destroyed." Proposed Second Amended Complaint, 99 (A at 399). (3) "The defendants falsely and fraudulently, and with intent to defraud the Plaintiffs, represented to the Plaintiffs that they would loan 1.6 million dollars to plaintiffs in order to induce plaintiffs into pledging the Vineyard property as collateral on a loan and by further inducing plaintiffs to execute the 1994 Assignment, Agreement and Release." Proposed Second Amended Complaint, 103 (A at 399-400). The New Breach of Contract Claim (1) "Plaintiffs fully performed their obligations under the terms of the March 21, 1991 Agreement, but the Defendants have failed to perform its obligation under paragraphs 1, 3, 6, and 7 of said agreement, thereby constituting a breach of contract." (A at 400, 108). The New Claim for Violation of G.L. ch. 93A 9 and 11 (1) "The above described acts and practices constitute a violation of the Massachusetts Consumer Protection Statute, M.G.L. Chapter 93A, 9 and 11." (A at 401, 111). -17- 17 F.3d 357, 361 (1st Cir. 1994) (quoting Greenstone v. Cambex __________ ______ Corp., 975 F.2d 22, 25 (1st Cir. 1992)). The rule requires that _____ the particular "'times, dates, places or other details of [the] alleged fraudulent involvement'" of the actors be alleged. Serabian, supra, at 361 (quoting In re GlenFed, Inc. Securities ________ _____ _______________________________ Litigation, 11 F.3d 843, 847-48 (9th Cir. 1993), reh'g en banc __________ ______________ granted, 11 F.3d 843 (9th Cir. 1994)). _______ The amended fraud claim in this case failed to meet the requirement of Rule 9(b) because in none of the three allegations of fraudulent statements by Defendants' predecessor did Plaintiffs identify specific conversations, the locations of the conversations, or the details of the conversations. This denial is additionally warranted in light of the fact that the district court granted Plaintiffs leave to amend the fraud claim, specifically directing Plaintiffs that the amended claim must meet the specificity requirements of 9(b).  3. The Amended Breach of Contract Claim 3. The Amended Breach of Contract Claim We affirm the district court's denial of this amended claim on the grounds that this amended allegation fails to state a legal claim for relief. In this amended claim, Plaintiffs allege that Defendant NTNY, under its predecessor name, breached the enumerated paragraphs of the 1991 Agreement to use its "best efforts" in securing the release of adverse claims to the property and developing the property. However, this amended claim alleges no instances where Defendant's predecessor failed to use its "best efforts." Thus, the claim, as amended, would -18- 18 indeed be futile, and the district court properly denied it. Further, we note that the district court did not give Plaintiffs leave to amend this claim of their complaint. Therefore, we affirm the denial of this untimely amendment. 4. The 93A Claim 4. The 93A Claim The district court granted Plaintiffs leave to amend their complaint with respect to this claim if Plaintiffs could prove that a demand letter was sent. This demand letter is a requirement to bring a 93A 9 claim. See G.L. ch. 93A 9(3); ___ Slaney v. Westwood Auto, Inc., 366 Mass. 688, 704 (1975); ______ _____________________ Baldassari v. Public Finance Trust, 369 Mass. 33, 41 (1975) __________ ______________________ (service of demand letter must be alleged and proved). The amended complaint fails to allege that such a letter was sent, all prerequisites to a 93A 11 claim. This claim requires that the alleged unfair or deceptive acts occurred "primarily and substantially" within Massachusetts. See G.L. ch. 93A 11. ___ Although the Proposed Second Amended Complaint provides some details of additional conversations involving NTNY's predecessor, these are alleged to have taken place in New Jersey, or in telephone calls with Likens of NTNY's predecessor, whose office was in Kansas. Thus, this supplementation does nothing to counter Defendant's prior showing that the acts at issue occurred primarily and substantially outside Massachusetts. It additionally does nothing to show that the events of which Plaintiffs complain occurred primarily and substantially within -19- 19 Massachusetts. Therefore, this amended claim would be futile, and the district court's denial of it was proper. CONCLUSION CONCLUSION For the reasons set forth above, the district court did not err in its grant of summary judgment on the grounds that (1) the 1990 Agreement was an unenforceable "agreement to agree," and (2) the 1991 agreement was a valid contract. Further, the district court's denial of Plaintiffs' proposed second amended complaint as futile was proper given the fact that the complaint failed to meet the specificity requirements required under 9(b) and it otherwise failed to state a legal claim for relief. The decision of the district court is AFFIRMED. AFFIRMED -20- 20